IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | NO. 4:07-cr-263 |
| WARREN TODD HOEFFNER, | § | |
| RACHEL ROSSOW, and | § | |
| JOHN PRESTAGE | § | |

DEFENDANT WARREN TODD HOEFFNER'S
MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS

"Defendant Hoeffner would and did make payments to defendants
Rossow and Prestage, through bribes and kickbacks, for recommending
that The Hartford pay certain amounts to settle the claims…."

--Indictment Counts 1, 3-9.

"[D]efendant . . . committed wire fraud and mail fraud through a
particular scheme to defraud, specifically… defendant paid bribes and
kickbacks to . . . Rachel Rossow and John Prestage, for recommending
that The Hartford . . . pay certain sums of money to settle…"

--Government's summary of indictment on day 1 of trial

"We don't think that the indictment charges a bribe or kickback case,
Your Honor."

--Statement by government during jury charge conference.

DEFENDANT WARREN TODD HOEFFNER moves to dismiss for Double Jeopardy, as follows:

## 1. <u>Introduction</u>

After a five and one-half week trial, the jury was unable to reach a unanimous verdict on any of the charges against Mr. Hoeffner, and a mistrial was declared. The jury's inability to reach a unanimous decision was caused at least in part by the government's repeated attempts to change the scheme to defraud theory alleged by the grand jury, which was at the core of, and affected the determination of, every count in the indictment. Despite the plain allegations in the indictment, the government repeatedly told the jury that this case did not involve "bribes and kickbacks" and did not allege inappropriate settlement amounts in exchange for the alleged bribes.

At the charge conference, the government urged that the jury be given only a "redacted" version of the indictment which blacked out the words "bribe" and "kickback." When that request was refused, the government requested jury instructions that described the "scheme to defraud" to eliminate any need for the government to show a bribe, a kickback, a "quid pro quo," or an inappropriate settlement amount in exchange for a bribe.

In closing argument, the government's only mention of the words "bribe" and "kickback" was to say that one need not be proven. The government made no

effort to demonstrate that Rossow and Prestage, in exchange for any payment, recommended any settlement amounts that were not appropriate or in the best interests of The Hartford and its insureds.

Shortly after beginning deliberations, the jury asked for a legal definition of the words "bribery" and "kickback," and the government objected. The next day the jury stated it was deadlocked and a mistrial was declared.

A retrial of Defendant is prohibited by the Double Jeopardy Clause of the Fifth Amendment because:

(1)    the government's abandonment of the "particular scheme to defraud" alleged in the indictment in the first trial bars a second trial; and

(2)    the government's deliberate efforts in the first trial to obtain a conviction on a purported "scheme to defraud" it knew was not presented to, or returned by the Grand Jury, in violation of Defendant's Fifth Amendment rights, forecloses any retrial.

## 2.  <u>The Indictment: "Bribes and Kickbacks"</u>

The Superseding Indictment alleges a conspiracy to commit mail fraud and wire fraud through "bribes and kickbacks":

17.    Defendant Hoeffner would and did make payments to defendants Rossow and Prestage, ***through bribes and kickbacks***, for recommending that subsidiaries of The Hartford pay certain amounts to settle the claims of his clients against The Hartford, its subsidiaries and its Insureds.

18. Defendants Hoeffner, Rossow and Prestage would and did falsely promise, pretend and represent to subsidiaries of The Hartford . . . that *the settlement amounts of the claims against The Hartford, its subsidiaries and its Insureds were appropriate amounts* to settle the claims in the best interests of The Harford, its subsidiaries and its Insureds, well knowing that the defendants intended that some of the money (the "Settlement Funds") would instead be funneled by and through Hoeffner to Rossow and Prestage.

19. Defendants would and did cause subsidiaries of The Hartford to pay more than $34,000,000.00 in Settlement Funds, knowing that more than $3,000,000.00 of those funds would be used to pay *bribes and kickbacks* to Rossow and Prestage. . . .

Doc. 52, Superseding Indictment at 7-8 (Count One ¶¶17-19) (emphasis added).

These bribe and kickback allegations are repeated verbatim in the substantive mail fraud and wire fraud Counts, and were the basis of the "specified unlawful activity" in the money laundering Counts. *Id.* at 23-24 (Count Three, ¶¶7-9), 26 (Count Four, ¶3), 28 (Counts Five through Nine, ¶3), 31-32 (Counts Ten through Thirteen, referring to transactions from "mail fraud"), 32-35 (Counts Fourteen and Fifteen, referring to transactions from "wire fraud").

The term "bribe" "requires proof of a *quid pro quo*," *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 405 (1999), that is, "a specific intent to give or receive something of value *in exchange* for an official act." *Id.; see also United States v. Washington*, 688 F.2d 953, 958-59 (5th Cir. 1982) (recognizing that "[b]ribery imports the notion of some more or less specific *quid pro quo*" and holding that, when an indictment alleges a bribery theory as the basis

- 4 -

for mail or wire fraud charges, a district court must properly instruct the jury regarding what constitutes a bribe). The term "kickback" likewise requires proof of a *quid pro quo*. *United States v. Vap*, 852 F.2d 1249, 1255 (10th Cir. 1988) ("A quid pro quid—the conscious exchange of value for official favoritism—is a necessary element of bribery-type crimes such as kickbacks.").[1]

There is no question that the government charged a "*quid pro quo*" here. In a press release issued immediately following the indictment, the government characterized the allegations as follows: A "Houston attorney. . . paid . . . ***bribes and kickbacks*** to former insurance company employees ***to recommend the settlement*** of silica-related claims . . . ." Ex. A (emphasis added). Likewise, at Defendant's initial appearance, the Magistrate Judge understood the charges were based on allegations of bribes and kickbacks made in exchange for favorable settlements in amounts that were neither appropriate nor in the best interest of The Hartford and its Insureds. She summarized the charges against Defendant, in pertinent part, as follows:

> And it's alleged that ***in exchange for favorable settlements*** that you paid Rossow and Prestage through ***bribes and kick-backs for recommending to the Hartford that Hartford pay certain amounts to***

---

[1]    *See also United States v. Ganin*, 510 F.3d 134, 148 (2d Cir. 2007) (bribery theory of mail fraud requires proof of a *quid pro quo*); *United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007) (bribery theory of wire fraud requires proof of a quid pro quo and specific intent by the defendant to engage in a quid pro quo exchange); *United States v. Rybicki*, 354 F.3d 124, 139 (2d Cir. 2003) (en banc) (in bribery or kickback mail fraud/wire fraud cases, a defendant who seeks some sort of business relationship pays the victim's employee "in exchange for favored treatment"); *United States v. Purdy*, 144 F.3d 241, 242 (2d Cir. 1998) ("[A] 'kickback' is a kind of commercial bribe."); *United States v. Rodriguez*, 159 F. 3d 439, 450 (9th Cir. 1998) ("[A] kickback . . . is often used colloquially as the simple equivalent of 'bribe.'").

> *settle* the claims of your clients against the Hartford Insurance and the Hartford.
>
> ***
>
> And it's alleged that ***representations were made that these amounts to settle claims were appropriate and in the best interest of Hartford***. And these representations were made knowing that you and Rossow and Prestage would—intended that some of the money would be funneled through you to Rossow and Prestage in order for—***to reimburse them or give them kick-backs for favorable settlement recommendations by them to Hartford***.
>
> ***
>
> ***…And it's alleged that these checks were kick-backs for recommending favorable settlements for your clients*** against Hartford or their clients.

Doc. 37; 6/27/07 Initial Appearance Tr. at 5-7 (emphasis added).

When it summarized the indictment for the jury at the outset of the case, the government confirmed that its case hinged on a "particular scheme to defraud" which focused on "bribes and kickbacks":

> Counts One, Three, Four, and Five through Nine allege that the defendant conspired to commit and committed wire fraud and mail fraud through a ***particular scheme to defraud***, specifically, it is alleged that the defendant paid ***bribes and kickbacks*** to two employees of The Hartford Financial Services Group, Inc., Rachel Rossow and John Prestage, ***for recommending that The Hartford and its subsidiaries pay certain sums of money to settle*** the claims of the defendant's clients against The Hartford, its subsidiaries and its insurers [sic]. ***The bribes and kickbacks were allegedly paid so that Rossow and Prestage would falsely recommend to The Hartford that the settlement amounts of the claims against The Hartford, its subsidiaries and its insurers* [sic]** *were appropriate amounts to settle the claims in the best interests of The Hartford, its subsidiaries and*

*its insurers* **[sic]**, well knowing that it was intended that some of the money would instead be funneled by Hoeffner to Rossow and Prestage. It is alleged that through this scheme the defendant caused subsidiaries of The Hartford to pay more than $34 million in settlements, knowing that more than $3 million of those funds would be used to pay the ***bribes and kickbacks*** to Rossow and Prestage.

Doc. 324, 8/24/09 Trial Tr. at 8-10.

In sum, the Defendant, the government, the Magistrate Judge, and the news media[2] knew that this case alleged *bribes* and *kickbacks* made in exchange for favorable settlements in amounts that were neither appropriate nor in the best interests of The Hartford.

### 3.  <u>The Defense: No Bribes or Kickbacks</u>

Defendant responded to the charges as follows:

(1)    he did not pay a bribe or a kickback;

(2)    The Hartford, over a dozen other insurance companies, approximately 40 insureds, and the defense counsel for the insureds found the settlement amounts to be appropriate and in their best interests; and

(3)    he only made payments because Rossow and Prestage, at the direction of Hartford Senior Vice-President David Cain, extorted Defendant for a portion of his attorney's fees under the settlements.

---

[2]    Consistent with the government's public characterizations of this case, the news media has consistently referred to the case as one involving "bribes" and "kickbacks." *See, e.g.,* M. Tolson, "Local Lawyer is Indicted in Alleged Plot for Kickbacks," Houston Chronicle (June 28, 2007); M. Flood, "Lawyer accused of giving bribes," Houston Chronicle (Aug. 24, 2009); M. Tennison, "Houston attorney on trial for using bribery to get big settlements for silica cases," The Southeast Texas Record (Aug. 28, 2009); M. Tolson, "Insurance kickbacks case goes to jury: State alleges bribery, but defendant says it was a shakedown," Houston Chronicle (Oct. 1, 2009); M. Tolson, "Lawyer kickback case ruled a mistrial: Attorney accused of paying firm to settle silicosis claims," Houston Chronicle (Oct. 3, 2009).

The proof of this defense was not easy to get. The government and The Hartford resisted discovery that the settlements were fair and reasonable. Only through the intervention of the Court in May 2008 did this *Brady* material come to light, including defense counsel recommendations, roundtable memoranda, loss cost savings analyses, and reinsurance documents. The government and The Hartford disagreed on who was to blame for the suppression of this evidence. The Hartford claimed that the government had the evidence since 2006, while the government claimed it was later. One thing was clear, however: this favorable evidence was not presented to the Grand Jury that indicted this case.

### 4. **The Trial**

As the trial unfolded after the jury was sworn, the defense showed that the settlement amounts were appropriate and that even The Hartford thought they were in its best interest. *See* Doc. 419, *Renewed Motion for Judgment of Acquittal*, at 10-29 (and record citations therein). In response, the government began changing its theory from what was indicted. By the third day of trial:

| Q. [BY MR. FLOOD]: | But the suggestion has been that ***Ms. Rossow somehow was receiving bribes and kickbacks for Mr. Hoeffner to get settlements that were higher than what was appropriate.*** |
|---|---|
| MR. BRADDOCK: | ***That's not what the indictment says.*** |
| THE COURT: | Excuse me? |

- 8 -

| | |
|---|---|
| MR. BRADDOCK: | ***He's misstating what the charges are in this case.*** |
| THE COURT: | All right.  How so?  I mean, let's hear the version you've got. |
| MR. BRADDOCK: | It's what the indictment says, Your Honor, in terms ***there was a scheme to defraud The Hartford of the right to their honest services and defraud them in terms of money, property and other things of value in connection with making recommendations, knowing that money from those payments made by The Hartford was going to be funneled back to employees of The Hartford, Your Honor.*** |

Doc. 330, 8/25/09 Trial Tr. at 197.

On the sixth day of trial, the government retreated from the inappropriate settlement amounts allegation:

| | |
|---|---|
| MR. CHRIS FLOOD: | The allegation against the client is, your Honor, that through bribes and kickbacks John Prestage, in this instance, recommended an inflated settlement amount or an inappropriate settlement amount – |
| THE COURT: | Hold it. |
| MR. CHRIS FLOOD: | – in exchange for that payment. |
| THE COURT: | Inflated and inappropriate, is that what your indictment is about? |
| MR. BRADDOCK: | No, your Honor.  ***It doesn't say that***. |
| THE COURT: | What's it about? |
| MR. BRADDOCK: | ***It's about recommending settlements, not disclosing that they're going to get money back*** |

*from the settlements, your Honor, that that was not disclosed to The Hartford*.

Doc. 340, 8/28/2009 Trial Tr. at 137 (emphasis added).

By the fourteenth day of trial, during the cross-examination of Buddy Bell,

the government was denying any kind of bribery or kickback scheme *at all*:

| | |
|---|---|
| MR. CHRIS FLOOD: | The indictment alleges a bribery scheme, does it not, Mr. Bell? |
| MR. BRADDOCK: | Once again, **Your Honor, it misstates the indictment.** |
| THE COURT: | Sustained. What does it say? |
| MR. BRADDOCK: | **It says, "A scheme to defraud involving the payment of settlements where the funds are funneled back to Ms. Rossow and Mr. Prestage, which was unknown to The Hartford."** |
| MR. CHRIS FLOOD: | Judge, it mentioned bribery, kickback on at least 12 occasions, so you tell me. |
| MR. BRADDOCK: | The payments are alleged in that form, but the indictment says this is the scheme, Your Honor. |
| MR. CHRIS FLOOD: | Let me ask it this way of the witness then. |
| THE COURT: | Okay. |
| Q. [BY MR. FLOOD]: | You read in that indictment where it alleges a bribery, kickback scheme like 12 times, right? |
| A. | I read the indictment. |
| Q. | You read that it said a bribery, kickback scheme, right? |

MR. BRADDOCK:          Again, Your Honor, ***it does not allege bribery, kickback scheme.***

THE COURT:             Sustained.

9/11/09 Trial Tr. at 95-96.

Moreover, when the defense demonstrated that the government had sponsored an internal Hartford "Pinkes" memorandum (Gov. Ex. 537) that falsely portrayed the settlement amounts as inappropriate and not in the best interest of the insureds, the government again argued that the allegations in the indictment apparently derived from this memorandum were "not the government's case." Rather, "[t]he government's case is that there was a scheme to defraud involving the payments by the defendant to these claims handlers, Mr. Prestage and Ms. Rossow, *that The Hartford didn't know about* when the settlements were made." 9/21/09 Trial Tr. at 38-39 (emphasis added).

At the charge conference, the government tried to rewrite the version of the indictment that would be given to the jury to match their previous mischaracterizations of the charges during the trial. The government asked the Court to excise the words "bribe and kickbacks" from of the indictment before giving it to the jury. *See* Ex. B (government's proposed redactions). Thus, for example, the government sought to change paragraph 17 of Count One as follows:

"Defendant Hoeffner would and did make payments to defendants Rossow and Prestage, ~~through bribes and kickbacks, for recommending that subsidiaries of The Hartford pay certain amounts~~

- 11 -

~~to settle the claims of his clients against The Hartford, its subsidiaries and its Insureds~~."

Ex. B at 7-8 (¶17).  The intent of these redactions was clear:  the government

had abandoned the "particular scheme to defraud" charged in the indictment.

When the Court refused to allow the indictment to be rewritten, the

government sought jury instructions that would allow conviction without a

finding of any bribe or kickback.   For example, on Count One, the

government sought and obtained a bribes *or* concealment instruction:

> First: That two or more persons made an agreement to commit the
> crime of wire fraud or mail fraud as charged in the indictment by
> using interstate wire communications or the mail in furtherance of a
> scheme and artifice to defraud The Hartford and its subsidiaries by
> paying **bribes and kickbacks** to Rachel Rossow and John Prestage,
> employees of The Hartford, for their recommending that The Hartford
> pay settlement amounts, **or** to obtain money and property from The
> Hartford by means of false and fraudulent pretenses, representations
> and promises, including the concealment of material facts by falsely
> promising, pretending and representing that settlement amounts of the
> claims against The Hartford, its subsidiaries and its Insureds were
> appropriate amounts to settle the claims in the best interest of The
> Hartford, its subsidiaries and its insureds, well knowing that the
> defendant and Rachel Rossow and John Prestage intended that some
> of the settlement money would instead be funneled through the
> defendant to Rachel Rossow and John Prestage.

Ex. C at 17-18 (emphasis added).

For Counts Three through Nine, which set forth the exact same scheme to

defraud alleged in Count One, the government sought and obtained an instruction

that omitted any reference to "bribe" or "kickback" at all:

First:  That the defendant knowingly created a scheme and artifice to obtain money and property from The Hartford and its subsidiaries, by means of false and fraudulent pretenses, representations and promises, including the concealment of material facts by falsely promising, pretending and representing that settlement amounts of the claims against The Hartford, its subsidiaries and its Insureds were appropriate amounts to settle the claims in the best interest of The Hartford, its subsidiaries and its Insureds, well knowing that the defendant and Rachel Rossow and John Prestage intended that some of the settlement money would instead be funneled through the defendant to Rachel Rossow and John Prestage.

Ex. C at 22, 25.

Under either instruction, the jury was relieved of finding bribes and kickbacks in exchange for recommendations of settlement amounts that were not appropriate or in the best interest of The Hartford and its insureds—even though that is what the indictment alleges.  Moreover, the jury likely was confused when the "manner and means" were described differently in the conspiracy count than the substantive counts, and the government objected to providing the jury with the legal definitions of "bribe" or "kickback."

## 5. <u>Government's Closing Argument</u>

In closing argument, the government mentioned the words "bribe" and "kickback" only to argue that it need not prove one.  9/30/09 Trial Tr. at 116-17. Rather – it now claimed – the "scheme to defraud" was only that "The Hartford did not know that the money from the settlements that had been made were being funneled back in part to Hartford employees, Rachel Rossow and John Prestage."

- 13 -

*Id.* at 39, 117.  In other words: no bribe, no kickback, no quid pro quo.  *Id.* at 44, 45, 47, 48.  To confound, the government, after abandoning "honest services," argued that the payments to Rossow and Prestage "would have been against [The Hartford's] code of conduct."  *Id.* at 39.

### 6. <u>Jury Deliberations</u>

With different schemes in the indictment, charge, and closing argument, the jury was indeed confused.  Shortly after beginning deliberations, the jury sent a note asking:

> Your Honor,
> The jury would like written definitions of the following legal terms: bribery, kickback, extortion, conspiracy, fraud.

Ex. D.  Defendant renewed his request for legal definitions of those terms, and the government objected.  The next day the jury could not reach a unanimous verdict, and a mistrial was declared.

The jury's confusion is understandable when, as shown below, the government abandoned the particular scheme to defraud alleged in the Indictment:

| The Indictment – "Bribes and Kickbacks" | The Government Disavows The Indictment |
|---|---|
| "Hoeffner . . . [made] payments to defendants Rossow and Prestage, through **bribes and kickbacks** for recommending that The Hartford pay certain amounts to settle the claims...."<br><br>■ Doc. 52, Superseding Indictment at 7 (Count 1, ¶17), 24 (Count Three, ¶7), 26 & 28 (Counts Four through Nine, ¶3). | "We **don't think that the indictment charges a bribe or kickback** case, Your Honor."<br><br>■ AUSA Braddock, 9/29/09 Trial Tr. at 41 (emphasis added) |
| Defendants [knew that] . . . funds would be used to pay **bribes and kickbacks** . . .<br><br>■ Doc. 52, Superseding Indictment at 8 (Count 1, ¶19; (Count Three, ¶9), 26 & 28 (Counts Four through Nine, ¶3) | "That's **not** what the indictment says."<br><br>■ AUSA Braddock, 8/27/09 Trial Tr. at 127 (denying that indictment alleged "**bribes and kickbacks**" (emphasis added) |
| "The defendant . . . committed, wire fraud and mail fraud through a **_particular scheme to defraud_**, specifically, . . . defendant paid **bribes and kickbacks** to . . . Rachel Rossow and John Prestage, **for recommending that The Hartford and its subsidiaries pay certain sums of money to settle . . . ."**<br><br>■ AUSA Braddock's "summary of indictment" on day 1 of trial | "Again, Your Honor, [the Indictment] does **not allege a bribery, kickback** scheme."<br><br>■ AUSA Braddock, 9/11/09 Trial Tr. at 95-96 |

## 7. <u>Argument and Authorities</u>

The Court should not permit the government to try Defendant a second time. The "bribes and kickbacks" scheme to defraud permeates every count in the indictment, yet the government abandoned the charged scheme as part of its strategy at trial. Because the government abandoned the essence of the indictment after jeopardy attached, it is not entitled to try Defendant again. Moreover, because the government deliberately sought a conviction on charges it knew were not presented to, or returned by the grand jury, in violation of Defendant's Fifth Amendment right to trial only on charges returned by a grand jury, a retrial should be barred.

### A. Because the Government Abandoned the Only Scheme to Defraud Alleged in the Indictment, Double Jeopardy Bars Retrial.

The Double Jeopardy Clause protects the integrity of final judgments but also guards "the separate but related interest of a defendant in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made." *United States v. Scott*, 437 U.S. 82, 92 (1978). In *Arizona v. Washington*, 434 U.S. 497 (1978), the Supreme Court explained that a second prosecution "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." 434 U.S. at

503.  "Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial."  434 U.S. at 505.

Thus, Double Jeopardy guards against a retrial of any charge or theory that the government ***abandons*** after the jury is sworn.  *See Humphries v. Wainwright*, 584 F.2d 702 (5th Cir. 1978); *see also United States v. Cavanaugh*, 948 F.2d 405 (8th Cir. 1991); *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988); *United States v. Gray*, 705 F. Supp. 1224 (E.D. Ky. 1988).

In *Humphries*, the government charged the defendant with DWI.  Near the end of the trial, the government dismissed both to avoid a feared acquittal and hoping to try the defendant for vehicular manslaughter by intoxication.  The Fifth Circuit held that the manslaughter trial was barred by double jeopardy.  Analogizing the dismissal to an "acquittal," Double Jeopardy barred the government from pursuing a related charge in a second trial.  584 F.2d at 706-07 & n.4; *see also Ochoa v. Estelle*, 445 F. Supp. 1076, 1081 (W.D. Tex. 1976).

*Saylor* also applied Double Jeopardy to a case of abandonment. The defendant was indicted on two charges, murder as an accomplice and murder by conspiracy.  845 F.2d at 1402.  The government at the close of trial asked the court to instruct the jury solely on the charge of murder by conspiracy; the defendant was convicted of murder by conspiracy; but the conviction was reversed.  *Id.*  The government then sought to retry the defendant on the accomplice charge, which

had not reached a verdict.  *Id.* at 1403.  The Sixth Circuit held that the Double

Jeopardy applied:  "[Due] to the prosecution's acquiescence in the [jury]

instructions given, the prosecution should bear the burden of the aborted outcome."

*Id.* at 1407.

*Cavanaugh* applied Double Jeopardy to an abandoned theory within a count.

In that case, eleven defendants were charged with a series of mob assaults leading

to murder.  There were two separate theories of the crime— "one continuous

criminal act of assault culminating in murder" and "two distinct crimes—murder

and a separate felonious assault."  948 F.2d at 412.  At trial, the government argued

and obtained an instruction that the assault and murder were "part of the same

continuous transaction."  *Id*. at 413.  Moreover, "[t]he Government's closing fills

over 120 pages of transcript and contains *only a single reference to the separate*

*assault charge . . . .*"  *Id.* at 411 (emphasis in original).

The defendants were convicted of murder, but the convictions were reversed

and the government sought to try the defendants for assault.  The Eighth Circuit

said "no":  "We find that the government at trial abandoned any theory that there

were two separate and distinct criminal acts. . . .  By the time of the government

closing, the prosecution had completely abandoned a theory that any assault was

separate from the murder."  *Id.*

Finally, *Gray* confirmed that Double Jeopardy applies to abandoned counts *or* theories. Defendants were charged with a single mail fraud conspiracy that alleged multiple theories of guilt. At trial, the government emphasized only an "intangible rights" theory. Although the government mentioned all its theories in closing, "intangible rights" was "the gravamen, the center of the government's case." *Id.* at 1228. Defendants were convicted but their convictions were reversed in *McNally v. United States*, 483 U.S. 350 (1987), which invalidated the "intangible rights" theory. The government sought to try the defendants on the remaining theories. However, the court held that the "government abandoned the other theories" by not pursuing them with the jury. *Id.* at 1232-33. Therefore, Double Jeopardy barred a second trial. *Id.*

In this case, as set forth above, the government abandoned the one and only "particular scheme to defraud" alleged in the indictment. The bribe and kickback scheme alleged was the foundation for each and every count against Defendant. In addition to abandoning the conspiracy and substantive counts of mail fraud/wire fraud (Counts 1 and Counts 3 through 9, respectively), the government abandoned the substantive money laundering counts (Counts 10-15), given that the mail fraud/wire fraud was the "specified unlawful activity" from which the proceeds

allegedly were derived.  Therefore, the Double Jeopardy Clause bars a retrial on

any count against Defendant.

The government may argue that its "one, and only one, opportunity to

[convict]" is subject to an exception: when the first trial fails to result in a verdict

due to circumstances beyond the government's control, the government generally

may try the defendant a second time.  *See Arizona v. Washington*, 434 U.S. at 505.

When that happens, the defendant's interest in avoiding successive trials must

yield to "the public interest in affording the prosecutor one full and fair opportunity

to present his evidence to an impartial jury."  *Id.*  But when the government's own

trial strategy is to blame, the result is different.  In that situation, the government

has already had its "one full and fair opportunity" to convict the defendant, and it

is not entitled to try again.  That is the case where the government provokes a

mistrial or avoids a verdict by its trial strategy.  *See Cavanaugh*, 948 F.2d at 417

("We hold that principles of double jeopardy . . . bars retrial for the assault charge

when the government's deliberate trial strategy caused the first trial to terminate

without the jury passing upon that charge."); *Saylor*, 845 F.2d at 1403 ("[W]here

the first trial ended without a verdict on the relevant charge for reasons of the

prosecution's making, a retrial on that charge would violate the protection the

Double Jeopardy Clause affords against harassing reprosecution."); *Gray*, 705

F. Supp. at 1228 (when a first trial fails to yield a verdict because of "the

prosecution's failure to present a particular theory to the jury, the government should not be given a second bite at the apple.").

Here, the government has had its "one full and fair opportunity" to obtain a conviction. The government squandered that opportunity when it abandoned the one and only "particular scheme to defraud" alleged in the indictment—a tactic that understandably confused the jury and resulted in a mistrial.

Although the government's actions appear to have been intentional, double jeopardy bars a second trial regardless of whether the government intended to cause a mistrial or engaged in misconduct. *See Saylor*, 845 F.2d at 1408 (noting that there was "no evidence that the prosecutor here acted deliberately"); *Gray*, 705 F. Supp. at 1232 ("if the error is caused by prosecutorial misconduct *or* the prosecution's failure to present a particular theory to the jury, the government should not be given a second bite at the apple") (emphasis added). Nor does it make any difference that ***after*** the jury became deadlocked, Defendant moved for a mistrial. In that situation, a mistrial is a "manifest necessity," not a choice by the defense. *See United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824); *Arizona v. Washington*, 434 U.S. at 509; *Illinois v. Somerville*, 410 U.S. 458, 463 (1973). Because the government abandoned the only scheme to defraud that it alleged in the indictment, double jeopardy bars a second trial.

**B.    The Government's Intentional Violation of Defendant's Fifth Amendment Right to Be Tried Only on Charges Returned by the Grand Jury Should Bar a Retrial**

The Double Jeopardy Clause also bars a second trial where the prosecutor, in the first trial, deliberately violates the defendant's constitutional rights, intending to prompt the defendant to seek a mistrial.  *Oregon v. Kennedy*, 456 U.S. 667, 671-79 (1982).  Based on the record in this case, it is apparent that the government, intending to gain a conviction or prompt Defendant into seeking a mistrial, deliberately violated Defendant's Fifth Amendment right to be tried only on charges returned by a grand jury.

The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment.  *United States v. Hoover*, 467 F.3d 496, 500 (5th Cir. 2006); *United States v. Threadgill*, 172 F.3d 357, 370 (5th Cir. 1999). U.S. Const. amend V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury. . . .").  The Supreme Court has recognized that it is anathema to this constitutional guaranty for a prosecutor to seek a conviction "on the basis of facts not found by, and perhaps not even presented to, the Grand Jury which indicted him." *Russell v. United States*, 369 U.S. 749, 763-764 (1962).

In this case, the government knew that what was presented to, and returned by, the grand jury was a charge that Defendant had paid bribes and kickbacks to

- 22 -

Rossow and Prestage in exchange for settlement amounts that were not appropriate and not in the best interests of The Hartford and its insureds. That is what the first indictment said back in June 2007. Doc. 1, Indictment, at 6-7, 20-21. That is what the government's press release said on the day of the first indictment. Ex. A. That is what the magistrate judge who arraigned Defendant understood the charges to be based on what she had been told by the government. Doc. 37; 6/27/07 Initial Appearance Tr. at 5-7. That is what the second indictment reiterated in March 2008. Doc. 52, Superseding Indictment, at 7-8, 23-24. And that is how AUSA Braddock summarized the charges for the jury at the outset of the trial. Doc. 324, 8/24/09 Trial Tr. at 8-10.

The government, however, tried to literally rewrite the charges when it became clear that the Pinkes Memo (Gov. Ex. 537) it sponsored to the jury at the beginning of the trial was demonstrably untrue and that it could not prove a bribe, a kickback, a quid pro quo, or a payment in exchange for a settlement amount that was not appropriate or in the best interests of The Hartford. The government's attempt to obfuscate the actual charges succeeded in causing confusion, leading to a hung jury and mistrial. This type of prosecutorial overreaching is exactly what the Fifth Amendment's right to trial only on grand jury indictment was designed to prevent. Where, as here, the government deliberately crossed the constitutional

line in a failed attempt to obtain a conviction on some theory, any theory, the government should not be allowed to try the defendant again.

## IV.    Conclusion

For these reasons, the Indictment should be dismissed.

Respectfully submitted,

/s/ Chris Flood
Chris Flood
914 Preston at Main, Suite 800
Houston, Texas  77002-1832
Telephone:  (713) 223-8877
Telecopier:  (713) 223-8879
State Bar No. 07155700
Southern District Bar No. 9929

Attorney-in-charge

David Gerger
State Bar No. 07816360
S.D. Tex. No. 10078
GERGER & CLARKE
1001 Fannin Street, Suite 1950
Houston, Texas 77002
Phone: (713) 224-4400
Fax:   (713) 224-5153

**Attorneys for Defendant
Warren Todd Hoeffner**

**OF COUNSEL:**

Lynne Liberato
State Bar No. 00000075
Southern District Bar No. 3072
Alene Ross Levy
State Bar No. 12260550
Southern District Bar No. 7480
Kent Rutter
State Bar No. 00797364
Southern District Bar No. 20519
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas  77010-2007
Telephone: (713) 547-2000
Telecopier: (713) 547-2600

R. Thaddeus Behrens
State Bar No. 24029440
HAYNES AND BOONE, LLP
700 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**Counsel for Defendant**
**Warren Todd Hoeffner**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this motion was served via electronic means through transmission facilities from the Court upon those parties authorized to participate and access the Electronic Filing System for the Southern District of Texas on this 19th day of October, 2009.

*/s/ Chris Flood*
Chris Flood